**SO ORDERED.**

**SIGNED this 18th day of September, 2006.**

_____
LARRY E. KELLY
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ENRIQUE LOYA, JR., | § | CASE NO. 04-32589-LEK |
| | § | |
| Debtor. | § | Chapter 11 |

| | | |
|---|---|---|
| ENRIQUE LOYA, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADV. NO. 05-3059 |
| | § | |
| BUSINESS LOAN CENTER, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION
REGARDING MOTION OF BUSINESS LOAN CENTER, INC.,
FOR PARTIAL SUMMARY JUDGMENT**

On this date came on to be considered the Motion for Summary Judgment filed on behalf of the Defendant, Business Loan Center, Inc., ("BLC") in the above styled and numbered

1

adversary proceeding (the "Motion"), along with the Response thereto,[1] filed on behalf of the Plaintiff, Enrique Loya, Jr. ("Loya").

## JURISDICTION

As a preliminary matter, this court addresses its post-confirmation jurisdiction to decide this adversary proceeding in general, and the Motion for Summary Judgment in particular.

Loya's "First Amended Chapter 11 Plan, as Modified September 15, 2005" (the "Plan") was confirmed on October 28, 2005. The case remains open, however. The issues raised in the Motion for Summary Judgment involve the enforcement and interpretation of the Plan and the order confirming it (the "Confirmation Order"). "[A] bankruptcy court retains jurisdiction to interpret and enforce its own orders to ensure their proper execution." **In re Rodriguez**, 252 F.3d 435 (5th Cir. 2001) (unpublished opinion), *citing* **In re Terracor**, 86 B.R. 671, 677 (D. Utah 1988) (a bankruptcy court "always retains jurisdiction to review and interpret its own orders"). *See also* **In re Doty**, 129 B.R. 571, 586 (Bankr. N.D. Ind. 1991) (holding that a bankruptcy court retained jurisdiction to rule on a motion requesting interpretation of a confirmed plan).

More specifically, following confirmation of a Chapter 11 plan, although "the retention of jurisdiction provisions of the Plan cannot confer or expand the [bankruptcy] Court's subject matter jurisdiction," the court retains jurisdiction "for matters pertaining to the implementation or execution of the plan." *See* **In re U.S. Brass Corp.**, 301 F.3d 296, 304 (5th Cir. 2002), *citing* **In re Craig's Stores of Texas, Inc.**, 266 F.3d 388, 390 (5th Cir 2001); *see also* **In re Kevco Inc.**, 309 B.R. 458, 465-66 (Bankr. N.D. Tex. 2004). One of Loya's causes of action on which BLC seeks summary judgment is a determination that BLC is not entitled to demand payment of certain charges from Loya's refinancing of certain property, as called for by the Plan. Loya

---

[1] The court notes a procedural defect with respect to the Response, not raised by any party. Although bearing the signature only of the Plaintiff's counsel in this adversary proceeding, the Response was electronically filed by Plaintiff's attorney in his bankruptcy case, who is not the attorney of record in this adversary proceeding and has not appeared herein.

Under the Court's Order Adopting New Administrative Procedures for Electronic Filing, effective December 1, 2004, "the filing of any document using a login/password combination issued by the . . . Court shall constitute an Electronic Filer's signature for purposes of signing the document under Fed.R.Bankr.P. 9011 or any other signature requirement imposed by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or any local rule of the . . . Court." Accordingly, the login used to electronically file a document must be that of the person who signs that document.

While this court, in the interest of justice, has considered the Response in this case, future non-compliance with the Administrative Procedures will result in the court striking the defective filing.

contends, in essence, that implementation of the Plan is affected by BLC's interpretation of what it is entitled to under the Plan and the Confirmation Order. Therefore, disposition of this adversary proceeding (by ruling on the Motion for Summary Judgment or otherwise) is necessary for the proper implementation and execution of the Plan, and this court finds it has subject matter jurisdiction to make that decision.

The parties have not disputed, and the court also finds, that this is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).[2] *See* **In re National Gypsum Co.**, 118 F.3d 1056, 1064 (5th Cir. 1997) (holding that action seeking declaratory judgment as to whether confirmation order bars collection of asserted preconfirmation liability is core proceeding under 28 U.S.C. § 157).

## BACKGROUND

### FACTS

The following facts are not in dispute. Loya filed a Chapter 11 case on October 13, 2004. BLC is his largest creditor, the holder of a lien on the two pieces of real estate owned by Loya, referred to by the parties as the "Alameda Property" and the "Pellicano Property." BLC timely filed a proof of claim for $400,088.42, which included an itemized list showing interest (both pre-petition and a current per diem rate), late fees, and "Misc. Fees."

In September, 2005, during the Chapter 11 case, the Alameda Property was sold and BLC was paid approximately $160,000 on its claim secured by that property.

On October 11, 2005, Loya filed a "Motion for Determination of Allowed Attorneys Fees and Interest of an Oversecured Creditor Pursuant to 11 U.S.C. Section 506(b) and Bankruptcy Rule 3012 and Request for Accounting of Collateral Sale Proceeds" (the "506(b) Motion"), seeking an itemization and "explanation" of how BLC had allocated the payment it received from the sale of the Alameda Property and of the amount of interest, attorneys fees and other costs subsequently being claimed by BLC in connection with a possible refinancing of the debt on the Pellicano Property, and seeking this court's determination of the allowed amount of BLC's oversecured claim.

---

[2] BLC originally disputed this court's jurisdiction in a motion to dismiss for lack of jurisdiction filed with its Answer, but later withdrew that motion. *See* Docket # 4, Defendant's Motion to Dismiss and Original Answer Subject Thereto, and Docket # 15, Notice of Withdrawal of Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction.

On October 13, 2005, BLC amended its proof of claim to take into account the payment that it had received. Specifically, the amended claim was for a total of $256,510.24, and included an itemized list showing the amounts of still unpaid accrued interest, late fees, Misc. Fees, and "Attorneys' Fees / Costs (through 9/30/05)," as well as a per diem interest rate going forward.

On October 18, 2005, a confirmation hearing was held on Loya's Plan, at which it was confirmed. The Confirmation Order was entered on October 28, 2005. Before the confirmation hearing, Loya had filed a motion to modify the Plan (the "Motion to Modify") and had amended that motion (the "Amended Motion to Modify"). The Amended Motion to Modify was granted by order entered after the Confirmation Order was entered.

In the Plan, Loya proposed to make periodic payments to BLC on its secured claim, and also to sell a portion of the Pellicano Property and pay the proceeds of that sale to BLC. The Plan also provided for the alternative possibility of the refinancing of the debt on the Pellicano Property.

On November 2, 2006, Loya withdrew the 506(b) Motion. On November 7, 2006, Loya filed an Objection to the Amended Claim of BLC and a Request for Accounting of Collateral Sales Proceeds (the "Objection"), in which he asked for basically the same relief as he requested in the 506(b) Motion and, in addition, he requested the disallowance of BLC's entire claim until it amended its claim to include only "Court approved" attorneys' fees.

On December 12, 2005, Loya withdrew the Objection. Ten days later, on December 22, 2005, Loya filed this adversary proceeding against BLC.

<u>RELIEF REQUESTED BY LOYA IN THIS ADVERSARY</u>

In his Complaint, Loya requests:

(1) a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that

    (a) "BLC's conduct . . . amounts to violation of the Plan and the permanent injunction contained in Paragraph 44 of this Court's Order confirming the Plan,

    (b) "that BLC improperly applied more than approximately $10,700.00 of Loya's pre-confirmation loan payment to unauthorized fees and expenses, which should have been applied instead to reduction in principal on BLC's loan to Loya, and

    (c) "that BLC has no claim against Loya for any unpaid late charges, other unspecified miscellaneous charges, recoupment fees or legal expenses as demanded by

4

BLC, because BLC failed to timely file any application for payment thereof as required [under] Paragraph 12 of this Court's Order confirming the Plan,"[3] and

(d) that BLC is enjoined by Paragraph 44 of the Confirmation Order from making any further demands for payment of such charges and from conditioning release of its lien on payment of such charges; and

(2) damages of at least $32,450.00 for breach of contract, the contract alleged to be the Plan and the Confirmation Order[4]; and

(3) attorneys fees and costs of at least $7,500.00 for bringing this adversary proceeding.[5]

BLC has answered and denied that Loya is entitled to any of the relief requested.

THE MOTION FOR SUMMARY JUDGMENT

On July 10, 2006, BLC filed its Motion asking for a partial summary judgment. On July 31, 2006, Loya filed his Response that Motion. Considering the nature of the dispute and being familiar with case and the facts, the court has taken the matter under advisement without hearing oral arguments. *See* **Kibort v. Hampton**, 538 F.2d 90, 91 (5th Cir. 1976) ("What [Federal Rule of Civil Procedure 56] contemplates is 10 day advance notice to the adverse party that the matter will be heard and taken under advisement as of a certain day. This provides the adverse party with an opportunity to prepare and submit affidavits, memoranda and other materials for the court to consider when ruling on the motion. If the adverse party is given this opportunity, then he has been heard within the meaning of Rule 56."); *see also* **Erco Industries Ltd. v. Seaboard Coast Line R. Co.** 644 F.2d 424, *431 (5th Cir. 1981) ("Although Rule 56 requires notice to an adverse party and a hearing, the hearing need not be an oral or formal evidentiary hearing."), *citing* **Bon Air Hotel, Inc. v. Time, Inc.**, 426 F.2d 858, 863 (5th Cir. 1970).

---

[3] In his Response to the Motion, Loya also argues that Paragraph 12 also prohibits BLC from collecting any post-petition interest as part of its oversecured claim. This allegation was not included in Loya's Complaint, however, and therefore has not been considered by the court.

[4] In his Response to the Motion, Loya limits the source of the contractual obligations he alleges were breached to the Plan.

[5] In its Motion, BLC appears to assume that Loya also states a cause of action for damages from BLC's alleged interference with a refinancing of the Pellicano Property in November and December of 2005. The court has carefully reviewed the Complaint and finds that, although the refinancing is mentioned, no such cause of action is plead, except possibly as factual support for Loya's claim for damages for breach of contract, discussed above.

The crux of the dispute in this adversary and the subject of the Motion and Response is whether BLC was required to timely file and have approved a separate application requesting allowance of its attorneys fees and other charges before it was entitled to allocate payments to those portions of its oversecured claim, and before it was (and is) entitled to demand payment of those attorneys fees and charges as part of its claim (which it allegedly did by providing payoff figures that included those fees and charges).  Specifically, Loya has claimed that BLC violated Paragraph 12 of the Confirmation Order by not filing such an application, and that it is now too late for BLC to do so, with the result that all of its attorneys fees and other charges have been discharged and should be disallowed.

Paragraph 12 provides:

All applications for payment of late charges, interest, penalties, costs, fees and additional charges shall be filed not later than the thirtieth (30th) day following the entry of this Order.  Failure to timely file such applications shall result in discharge of such obligation.

From this argument, Loya claims, it flows that BLC improperly allocated payment to, and demanded payment of, those disallowed charges, violating the Plan and Confirmation Order and causing him to suffer damages.

For a number of reasons, BLC disputes this and requests the court to grant it a partial summary judgment denying Loya's request for a declaration that it has no claim for attorneys fees and other charges, but leaving the determination of whether it is entitled under its agreement to those fees and charges, and their amount and reasonableness, to the time of trial.  It also requests summary judgment denying Loya's claims for breach of contract, based on its argument that Loya cannot show that it violated the Plan (i.e., breached a contract) and even if it did, Loya cannot show any damages were suffered as a result of that violation/breach.

BLC's Motion for Summary Judgment does not expressly address Loya's request for a determination that it violated and/or would violate the injunction in Paragraph 44 of the Confirmation Order by demanding payment of these charges in connection with a past or future refinancing of the Pellicano Property.  Loya did not address the issue in his Response, either.  The court considers the issue, however, as having been raised by BLC's general requests for a partial summary judgment that it has an allowed claim that includes its reasonable attorneys fees and other charges pursuant to 11 U.S.C. § 506(b), and that it was entitled to allocate payments from the sale of the Alameda Property as it did.

6

For the reasons stated below, the court finds that BLC's Motion should be granted as to all of the above-described relief that it has requested.

However, in addition to its request for summary judgment denying Loya the relief he requests in *this* adversary, BLC also seeks in the Motion a summary judgment and/or findings and conclusions regarding certain relief requested by Loya in Adversary No. 06-3027.[6] In a footnote in the Motion, BLC argues that *that* adversary proceeding should be consolidated with this one, allowing the court to consider and grant such relief. However, no motion to consolidate the two adversaries has been filed, and Loya in his Response has objected to the court considering and granting relief that is not raised in any pleading filed in this adversary proceeding. This court agrees, and therefore declines to do so, finding that all such relief should be denied without prejudice.

## DISCUSSION AND ANALYSIS

### SUMMARY JUDGMENT STANDARDS

In an adversary proceeding, summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); **Anderson v. Liberty Lobby, Inc.,** 477 U.S. 242, 248 (1986); **Bailey v. United Airlines**, 279 F.3d 194, 198 (3d Cir. 2002). An issue is material if its resolution could affect the outcome of the action. **Perez v. United States**, 312 F.3d 191, 193 (5th Cir. 2002), *citing* **Anderson**, 477 U.S. at 248. In deciding whether a fact issue has been created, the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *See* **Perez**, 312 F.3d at 193, *citing* **Olabisiomotosho v. City of Houston**, 185 F.3d 521, 525 (5th Cir. 1999); *see also* **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 587 (1986) (when ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant). In other words, the court must accept the non-movant's version of the facts as true and resolve conflicts in the non-movant's favor. *See* **Big Apple BMW, Inc. v. BMW of North America, Inc.**, 974 F.2d 1358, 1363 (3d Cir. 1992).

---

[6] Specifically, Defendant requests that this court determine that the injunction against its foreclosing that was issued in that suit prior to its removal to this court should be dissolved, for a number of reasons.

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23 (1986). Once the movant has done so, however, the non-moving party cannot simply rest on its pleadings. *See* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.").. A non-moving party "will not be able to withstand a motion for summary judgment merely by making allegations; rather, the party opposing the motion must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." **In re Ikon Office Solutions, Inc.**, 277 F.3d 658, 666 (3d Cir. 2002). This requirement is not satisfied by "speculation, conjecture, or fantasy"; it requires sufficient probative evidence to allow a finding in its favor, assuming the evidence is established at trial. **Wilson v. International Business Machines Corp.**, 62 F.3d 237, 241 (8th Cir. 1995); *see also* **Brown v. City of Houston, Tex**., 2003 WL 21517366, *2 (5th Cir.) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."), *citing* **Bridgmon v. Array Systems Corporation**, 325 F.3d 572, 577 (5th Cir. 2003) *and* **Hugh Symons Group, PLC v. Motorola, Inc.**, 292 F.3d 466, 468 (5th Cir. 2002). In other words, if "the evidence submitted by the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted because '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine" issue for trial.'" **Hawking v. Ford Motor Credit Co.**, 210 F.3d 540, 545 (5th Cir. 2000).

Where, as here, the party requesting a summary judgment is the defendant, the plaintiff as "the party who would carry the burden of proof at the trial[,] is obliged, in resisting the motion, to demonstrate only that his or her claim is backed by admissible evidence in those particulars specifically singled out by the moving party." **Clayton v. James B. Clow & Sons**, 154 F. Supp. 108 (N.D. Ill. 1957).

8

PARTIAL SUMMARY JUDGMENT THAT BLC DID NOT VIOLATE THE PLAN

BLC argues that it is entitled to partial summary judgment denying Loya his request for a declaration that it violated the Plan and, BLC further argues, even if it did violate the Plan, Loya can present no evidence that he incurred any damages for any such violation(s).

Although Loya in his Complaint requests a declaratory judgment that BLC's conduct amounts to violation of the Plan and the Confirmation Order, he identifies only two provisions of the Confirmation Order (discussed below) as having been violated. In his Response to the Motion, Loya again makes the general statement that the Plan was violated, but again identifies only the Order's provisions as violated and does not point to *any* provision of the Plan. The court has reviewed the summary judgment record, and has carefully examined the Plan and the two modifications to the Plan that were filed by Loya. The two provisions that Loya identifies as having been violated by BLC can not be found anywhere in those documents.

However, the court in its own review of the Plan and the modifications to it, has identified one provision that arguably was violated by BLC's demands for payment of its allowed secured claim including its attorneys fees and other charges. Specifically, the Plan as modified by the Amended Motion to Modify included a provision[7] that:

---

[7] This provision was included for the first time in Loya's Amended Motion to Modify. That Motion was not filed until October 25, 2006, after the confirmation hearing on October 18th. It was announced at the confirmation hearing by counsel for Loya and counsel for BLC that an agreement had been reached between their clients as to the treatment of BLC's claim. The Amended Motion to Modify included changes to BLC's treatment. One would therefore presume that those modifications were those negotiated just prior to the confirmation hearing, and were agreed to by counsel for BLC at that hearing. *See* Docket # 154, Transcript of hearing held 10/18/05 (the "Transcript).

However, the identical language as is contained in the Amended Motion to Modify was included in the proposed Confirmation Order that counsel for Loya submitted prior to the filing of the Amended Motion to Modify, and that Order reflects that counsel for BLC "refused to sign" it. *See* Docket # 155, Order Confirming First Amended Plan of Reorganization as Modified September 15, 2005 and October 25, 2005, p. 18. The court entered that form of Confirmation Order on October 28, 2005, relying on Loya's counsel's representation at the confirmation hearing that BLC's attorney's signature would be obtained before the proposed Order was uploaded, and because neither counsel brought to its attention any dispute regarding the form of the Order. *See* Transcript, p. 11 ("I'm going to need Mr. Rollins' signature and Mr. Epstein's signature on the order confirming, so I'll have to get those. And then we can–once I get them, I'll upload.").

However, BLC never requested the court to reconsider its entry of the Confirmation Order, did not appeal that Order, and never objected to the Amended Motion to Modify. The Amended Motion to Modify was ultimately granted by the court without a hearing, because of the representations at the confirmation hearing and because it drew no objection from BLC or any other party (and having already been approved by entry of the Confirmation Order, which incorporated it). *See* Docket # 194, Order Granting First Amended Motion for Modification to First Amended Plan of Reorganization, as Modified

9

> Should the Debtor / Reorganized Debtor sell or refinance its property located on Pellicano Street prior to the expiration of the contract, the Class 5 Claimant [i.e., BLC] is prohibited from charging the Debtor / Reorganized Debtor any attorneys fees, past due charges, pre-payment penalty fees or charges without further Order of this Court.

Docket # 153, Amended Motion to Modify, p. 4.

As evidence of BLC's conduct that violated the Plan, Loya's Response refers to an October 13, 2005, letter from BLC's counsel to Loya's bankruptcy counsel, "providing a payoff statement." Loya claims that that letter "shows that BLC was demanding payment of accrued interest, late fees, miscellaneous fees, recoupment fees and attorney's fees as a condition for the loan payoff . . .." Response, p. 2, para. 5. However, that characterization of the intent and purpose of the letter is merely opinion and argument since the letter itself is not included as evidence on the Motion for Summary Judgment and cannot be found in the record.[8] The court is therefore unable to determine for itself BLC's counsel's intent in writing and sending the letter. Moreover, there is no competent summary judgment evidence that the letter was even written and sent by counsel for BLC, only the unsworn allegations in the Response referring to it.

Although Loya has not offered any evidence to support his claim that BLC violated the Plan, there is some evidence in the summary judgment record on the issue–BLC's own admission in its Motion that it allocated the payment it received from the sale of the Alameda Property not only to principal, but that it also allocated "$10,868.58 to reimbursement for

---

September 15, 2005 Pursuant to 11 U.S.C. § 1127(a). BLC never appealed that Order, either.

In addition, there is no indication, let alone evidence, that the provision in question was even a reason that BLC's counsel refused to sign the Confirmation Order. Moreover, BLC's acquiescence by failing to request reconsideration of or appeal the court's orders estops it from disputing that the provision was properly included in the confirmed Plan and binds it. *See* 11 U.S.C. § 1141(a) ("the provisions of a confirmed plan bind the debtor, . . . and any creditor, . . . whether or not the claim . . . of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan").

[8] Loya in his Response states that his summary judgment evidence is attached to his response to a previous motion to dismiss filed in this adversary by BLC, and he refers to and incorporates by reference such exhibits. However, a review of the record shows that that response (Docket # 11) merely states that the exhibits to it are attached to a witness and exhibit list also filed by Loya in connection with that motion to dismiss. A review of the witness and exhibit list filed in the case (Docket # 12) reflects that no exhibits are attached to that document either. While the exhibits in question were tendered to the court at the non-evidentiary hearing on the motion to dismiss on February 22, 2006, they were never offered or admitted and are not part of the record. Other than exhibits such as the Plan that are pleadings filed of record in this adversary proceeding and in Loya's bankruptcy case, this court has not been able to locate and review any of what Loya references as his summary judgment evidence.

10

attorneys' fees and related expenses, $1,622.55 to the SBA (through its fiscal and transfer agent) as a prepayment / recoupment fee, and $720.00 to reimbursement for the cost of forced placed insurance." Motion, p. 6, para. (xii). These payments are challenged by Loya as having violated the Plan, because BLC had not obtained an order of the court allowing these charges.

Even assuming the letter was sent and received, and its content and intent were as Loya claims, and/or considering the payments admitted by BLC were actually made from the proceeds of the Alameda Property, both the letter and the allocation of payment predate the inclusion in the Plan of the provision requiring court order before BLC could "charge" such amounts, and predates confirmation of the Plan when that provision first became operative. Writing and sending the letter, and allocating the payments as BLC did, could therefore not have violated the Plan.[9]

Similarly, Loya's Response also identifies a December 9, 2005, letter from BLC's counsel to the title company allegedly involved in the refinancing of the Pellicano Property, claiming that such letter "demand[ed] payment to BLC in the amount of $260,029.26 plus additional attorney's fees, as a condition to BLC's release of its lien [and that t]his demand included other charges and legal expenses in addition to the miscellaneous fees, recoupment fees, late charges and legal expense in addition to the principal amount due." Response, p. 5, para. 23. Again, however, this statement is not supported by any summary judgment evidence, and the court is unable to determine the existence, content or the intent of the alleged "demand" letter.

In the absence of any summary judgment evidence supporting Loya's claim that conduct of BLC violated the Plan, the court finds and concludes that BLC should be granted summary judgment denying Loya relief on his claim for declaratory judgment to that effect.

---

[9] Loya also argues in his Response that writing and sending the letter violated §§ 362 and 549. Response, p. 10, para. 46. These allegations are not mentioned in Loya's Complaint and so the court does not address them.

<u>PARTIAL SUMMARY JUDGMENT THAT LOYA NOT ENTITLED TO DAMAGES
FOR BLC'S VIOLATION OF THE PLAN AS A BREACH OF CONTRACT</u>

Having found no liability on BLC's part for violation of the Plan, the court necessarily concludes that Loya is not entitled to damages for that alleged breach.[10] BLC's request for such partial summary judgment is therefore denied without prejudice.

<u>PARTIAL SUMMARY JUDGMENT
THAT BLC DID NOT VIOLATE THE CONFIRMATION ORDER
(AND THAT A FUTURE DEMAND THAT INCLUDES
ATTORNEYS FEES AND OTHER CHARGES
WOULD ALSO NOT VIOLATE THE CONFIRMATION ORDER)</u>

Loya also requests declaratory relief that BLC violated the Confirmation Order when it made demands for fees and other charges, including a "recoupment fee," because no application requesting allowance of those fees and charges was timely filed by BLC. He also requests a declaratory judgment that all such fees and charges are therefore now disallowed and discharged, so that any future demand for their payment is enjoined under the Confirmation Order.

He makes these claims under two provisions of the Confirmation Order, Paragraphs 44 and 12.

### **No Violation of Paragraph 44's Injunction**

The court considers BLC's request for partial summary judgment to include a request to deny Loya's claim that BLC violated the injunction in Paragraph 44 of the Confirmation Order and that its future demands for payment of its attorneys fees and other charges would also violate that injunction.[11] The specific provision of Paragraph 44 that Loya claims in the Complaint that BLC's demands violate, provides:

> Except as provided in the Plan, as of the effective Date, all entities that have held, currently hold, or may hold a Claim or other debt or liability against the Debtor are permanently enjoined from taking any of the following actions on account of any such Claims, debts or liabilities: . . . asserting against the Reorganized Debtor or the property transferred to the Reorganized Debtor under the Plan, a set-off,

---

[10] This is not to say that Loya is not entitled to credit (by re-allocation) if BLC has allocated payments to amounts that the court ultimately finds, after trial, that BLC is not owed for reasons other than the Plan provision requiring an order of the court prior to payment–for instance, amounts not owed because not reasonable, or not specified as payable under BLC's and Loya's agreement.

[11] As discussed above, BLC's argument regarding Paragraph 44 is not express, but is necessarily included in its request for partial summary judgment denying Loya's claims that it is barred by the Confirmation Order from making demand, or being paid, its attorneys fees and other charges. *See* discussion at pp. 6-7, *supra*.

right or claim of subordination or recoupment of any kind against any debt, liability or obligation due from the Debtor . . ..

Again, the conduct identified by Loya is the sending of the two letters by its counsel, neither of which is in evidence. In any event, both the October 13, 2005, letter and BLC's admitted allocation of the proceeds of the Alameda Property, predate the entry of the Confirmation Order and the injunction of Paragraph 44. The December 9, 2005, letter and/or any future demand by BLC for payment of its allowed secured claim, including its attorneys fees and other charges, were and are not prohibited by the injunction because such actions are not "asserting against the Reorganized Debtor or the property transferred to the Reorganized Debtor under the Plan, a set-off, right or claim of subordination or recoupment of any kind against any debt, liability or obligation due from the Debtor . . .." Other than the reference by Loya in the Complaint to a demand by BLC for "recoupment fees," and the mention by BLC in its Motion of its allocation of proceeds to "the SBA . . . as a prepayment / recoupment fee," Loya has not identified, let alone presented evidence of, any attempt by BLC to set off, recoup or subordinate any claim of the Debtor against its claim. Indeed, there is absolutely no mention *any*where (even in Loya's Plan or Disclosure Statement) of *any* claim of the Debtor against BLC against which the latter might assert a right of set off, recoupment, or subordination. BLC's past demand for *payment* of its allowed secured claim from the Debtor or from his property did not, in and of itself, constitute an assertion of "a set-off, right or claim of subordination or recoupment," nor would that language in Paragraph 44 apply to any future demand for payment.

For these reasons, the court finds that BLC's request for partial summary judgment on this claim should be granted.

### No Violation of Paragraph 12

As described above, Paragraph 12 of the Confirmation Order provides:

All applications for payment of late charges, interest, penalties, costs, fees and additional charges shall be filed not later than the thirtieth (30th) day following the entry of this Order. Failure to timely file such applications shall result in discharge of such obligation.

BLC in the Motion requests a partial summary judgment denying Loya's claims that it violated Paragraph 12 when it allocated the proceeds of the Alameda Property to its attorneys fees and other charges, and that it is prohibited by Paragraph 12 from making demand and collecting those fees and charges from Loya or his property in the future.

13

Again, Loya refers only to the two letters allegedly from BLC's counsel dated October 13 and December 9, 2005, as evidence showing BLC violated Paragraph 12 of the Confirmation Order. As discussed above, the letters are not in evidence and the only other summary judgment evidence regarding any conduct of BLC is its allocation of the proceeds the Alameda Property, and that conduct predates the entry of the Confirmation Order. Therefore, the court finds and concludes that BLC should be granted partial summary judgment denying Loya's cause of action for a declaration that BLC violated Paragraph 12 of the Confirmation Order.

However, BLC also requests summary judgment denying Loya's request in his Complaint for what is, in essence, prospective relief–a declaration that BLC *would* violate the injunction in the Confirmation Order *if* and *when* it makes demand for payment of the attorneys fees and other charges that Loya claims are disallowed and discharged. This issue requires the court to examine in detail, and determine, the applicability and meaning of Paragraph 12 of the Confirmation Order.

BLC contends in its Motion for Summary Judgment that the court should find as a matter of law that it had no obligation to file a separate application but rather, having filed its Amended Proof of Claim that included the fees and charges, that portion of its claim was deemed allowed and it therefore was entitled to demand that it be paid those amounts before releasing its lien.

Loya has not cited, and the court is not aware of, any requirement in the Code that an oversecured creditor seek court approval of its attorneys fees and other charges by filing of an application or other pleading, where it has timely asserted such a claim in a properly filed proof of claim. Loya bases his argument solely on Paragraph 12 of the Confirmation Order.

Paragraph 12 by its terms sets a deadline for filing any "applications for payment of late charges, interest, penalties, costs, fees and additional charges." Loya argues that it *requires* that any party claiming attorneys fees and other charges as part of an oversecured claim file such an application by the stated deadline. It does not expressly do so, however, and the court declines to interpret it as imposing such a requirement, for the following reasons.

First, Loya has not sought to apply Paragraph 12 to other creditors in the same way. Rather, he has provided for payment in full, including attorneys fees, of the oversecured claim of at least one of his other creditors without requiring it to have filed such an application. *See e.g.,* Docket # 130, Plan at p. 9, para. 6.06 (providing that oversecured claim of Toyota Motor Credit

14

Co. for costs and attorneys fees would be paid as an administrative expense claim, although it filed no application under Paragraph 12).

Second and more important, Paragraph 12 was apparently unilaterally inserted in the Confirmation Order by Loya's bankruptcy counsel, without notice or compliance with the provisions of the Bankruptcy Code and Rules on plan modifications. As stated above, the court has carefully examined the Plan, Loya's Disclosure Statement, and the two modifications to the Plan that were filed by Loya. *No*where in *any* of those documents can be found the language of Paragraph 12 of the Confirmation Order.

Section 1127 governs modification of plans. As applied to this case, it provided:

**§ 1127. Modification of plan**

(a) The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.

(b) The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.

(c) The proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified.

(d) Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

Federal Rule of Bankruptcy Procedure 3019 further provides:

In a chapter 9 or chapter 11 case, after a plan has been accepted and before its confirmation, the proponent may file a modification of the plan. If the court finds after hearing on notice to the trustee, any committee appointed under the Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.

15

No attempt was made to comply with § 1127 and FRBP 3019 with respect to Paragraph 12's terms. No motion to modify the Plan was ever filed, no creditors received notice of the inclusion of the provision in the Confirmation Order, none were provided an opportunity to object or to change their vote on the Plan after considering the terms of Paragraph 12. Further, no mention of the terms of the provision was made at the confirmation hearing and, not being advised of the issue, the court was never specifically directed to the language at issue and, thus, never directly approved it.

The provision is clearly material.[12] The Bankruptcy Code and Rules provide a well-established procedure for claim allowance. It is not disputed that BLC's original claim was timely filed, and there is no contention that its October 13, 2005, amendment of that claim does not relate back to the initial proof of claim and that it should not be considered timely. *See* Docket # 4, Order Combined with Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines (setting February 15, 2005, as the deadline for filing claims); Proof of Claim # 6 filed by BLC on November 15, 2004; Amended Proof of Claim # 17 filed by BLC on October 13, 2005; **In re Kolstad**, 928 F.2d 171, 176 fn.7 (5th Cir.), *cert. denied,* 502 U.S. 958 (1991) (late filed claim may be allowed as an amendment to a timely filed claim, so long as claimant is not "attempting to stray beyond the perimeters of the original proof of claim and effectively file a 'new' claim that could not have been foreseen from the earlier claim . . ." and so long as "the degree and incidence of prejudice, if any, caused by [the claimant's] delay" is not too great). Therefore, BLC's Amended Claim is deemed allowed in the absence of objection. *See* 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."); *see also* FRBP 3001(f) ("A proof of claim

---

[12] The provision is clearly material at this point. When first inserted in the Confirmation Order, BLC may well have considered it unimportant, since there was at that time an action pending–Loya's 506(b) Motion–that addressed the allowance of BLC's attorneys fees and other charges. Loya's tactics in filing and withdrawing his 506(b) Motion and, later, his Objection to BLC's Claim, create another issue as to whether he should be estopped to claim BLC missed the deadline in Paragraph 12, when other pleadings that addressed the allowance *vel non* of BLC's attorneys fees and other charges were pending at almost all times until after the deadline to file under Paragraph 12 had expired. The court declines to address that issue at this time, however, because it is not necessary considering its ruling on the Motion for Summary Judgment and because Loya's lack of summary judgment evidence prevents the court from determining the reason(s) he withdrew his pleadings.

executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.").

Further, because that claim is oversecured, it includes BLC's attorneys fees and other charges to the extent reasonable and provided under its agreement with Loya. *See* 11 U.S.C. § 506(b) ("To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose."). These issues are not the subject of BLC's Motion for Summary Judgment, but are reserved for trial.

Further, at least in this Circuit, even stricter, more specific procedural safeguards apply to claims that are secured by liens. The Fifth Circuit Court of Appeals has repeatedly held that liens are not, and cannot be, affected by treatment proposed in a plan of reorganization, and that the *only* way a lien can be limited is through a pleading specifically addressing the issue and served on the claimant, providing an opportunity to respond and be heard. *See e.g.,* **In re Simmons**, 765 F.2d 547 (5th Cir. 1985) (holding that when no objection was filed to a creditor's proof of secured claim prior to confirmation of debtor's Chapter 13 plan, the claim was deemed allowed as a secured claim, even though plan had called for it to be treated as an unsecured claim and there had been no objection to the plan); **In re Howard**, 972 F.2d 639 (5th Cir. 1992) (holding that confirmed Chapter 13 plan which purports to reduce or eliminate claim of secured creditor who failed to object before confirmation is res judicata as to that creditor only if debtor has filed objection to creditor's claim). While these decisions involved Chapter 13 plans, nothing in the opinions would preclude the reasoning from applying to secured claims in Chapter 11 cases as well.

Loya does not dispute these statements of the law, but rather relies on Paragraph 12 of the Confirmation Order to "trump" them, or at least to add another procedural hurdle to the allowance of BLC's attorneys fees and other charges. The court declines to interpret the language of Paragraph 12 in that way, when to do so would be to disregard the uniformly accepted evidentiary presumptions and procedural rules for allowance of claims established by

the Bankruptcy Code and Rules, in favor of a case-by-case, individualized procedure imposed without notice to those adversely affected thereby, and without effective court review.[13]

The court therefore finds and concludes that BLC should be granted partial summary judgment denying Loya's claims that Paragraph 12 of the Confirmation Order barred either its previous demand for payment of its claim, including any allowed attorneys fees and other charges, or any future such demand, or payment of such allowed amounts.

## **SUMMARY AND CONCLUSION**

Based on all of the foregoing, the court finds and concludes that partial summary judgment should be entered in favor of the Defendant BLC and against the Plaintiff, denying his claims that BLC's claim for attorneys fees and other charges are disallowed and discharged by virtue of the Plan and/or the Confirmation Order, and his claims for any and all damages. Specifically reserved for determination at trial are the issues of (1) whether and to what extent BLC's attorneys fees and other charges are provided for under its agreement and are reasonable, and (2) to what extent payments, if any, that were previously allocated to any portion of its claim that may be disallowed, should be re-allocated to the allowed portion(s) of its claim.

# # #

---

[13] In this regard, the court is compelled to express its displeasure and disapproval of the practice of inserting in an order confirming a plan a provision that was totally absent from any version of the disclosure statement and from the plan itself, and where absolutely no evidence was offered at the confirmation hearing as to the reasonableness of, and the necessity for, such a provision. Such "padding" of the Confirmation Order in this very case has already caused other unnecessary and time- and money-consuming litigation.

Neither is it acceptable to submit, without bringing it to the court's attention, a proposed order without opposing counsel's signature when the court directed, or was advised, that such signature would be included.

Both of these practices improperly shift the burden of submitting what should be a relatively routine order from counsel tasked with the job, to counsel for each and every other party in interest who could be possibly be affected by the order. A lawyer's duty of candor to the court and fairness to other counsel should allow both the court and opposing counsel to rely on counsel to submit an order in accordance with the court's ruling as directed, and nothing more.